### PRICE v. RAILROAD COMPANY.

1. The employee of a railroad company having received injuries through its alleged negligence, released the company, for value, from all liability on account of such injuries; and afterwards. died. *Held*, that his administratrix, suing for the use of the widow and child of the intestate, could not maintain action for the damages resulting to them from his death, as, under the statute, such action can be maintained only where the party injured could have maintained such action if death had not ensued; and this the deceased could not have done, because his release debarred him. And the trial judge erred in refusing to admit this release in evidence against the administratrix.
2. The provision of the law that the remedy given by this statute "shall not apply to any case where the person injured has, for such injury, brought action which has proceeded to trial and final judgment before his or her death," is not an exception to the previous sections, nor does it imply that action in behalf of the widow and children will be defeated only by judgment already had in an action instituted by the intestate, but was only intended to prevent a double remedy for the same wrongful act in any possible case.
3. *It seems* that the cause of action given by the statute to the widow and children in such cases, is only a continuation of the original cause of action, accruing to the party injured, but enlarged in its scope so as to embrace the damages resulting from the death.

Before NORTON, J., Richland, October, 1889.

This was an action by Emma W. Price, as administratrix of her husband, Philip H. Price, against the Richmond & Danville Railroad Company, to recover damages done to herself and child by the negligent killing of her husband by a projecting roof while he was acting as conductor of a freight train of defendant. The action was commenced in August, 1888. Among

other defences, the defendant pleaded a release by intestate, and at the trial offered it in evidence.    This release was as follows:

"RICHMOND & DANVILLE R. R. Co.,  ⎫  To P. H. PRICE,    DR.
                                 ⎬      Address: Columbia,
    "C. & G. Division.           ⎭          Richland Co.

"Know all men by these presents, that for and in consideration of the sum of three hundred and ninety 00–100 dollars, to me paid by the Richmond & Danville Railroad Co., and Columbia & Greenville R. Co., the receipt whereof is hereby acknowledged, I do hereby release and forever discharge the said Richmond and Danville Company, and Columbia & Greenville R. Co., from any claim, demand, or liability for payment of any further or other sum or sums of money for, and on account or growing out of the following claim, viz.:

"1887.

"August 5. For—In full for all claims for damages arising from injuries received at Alston February 18th, 1887.    $390.00.

"Settle and remit.

                    "W. E. TURNER,
                            "Treas.

"Pay S. Morrison, agent, Columbia, S. C.

"8 | 5 | , 1887.    Cash.

"And in consideration thereof I do hereby agree that the payment of the above named sum shall operate as a full and complete release, discharge, and satisfaction of any, every, and all claims and demands against said Richmond & Danville Railroad Company, and Columbia & Greenville R. Co., arising or growing out of the matter above set forth, and that the same will and shall operate as a perpetual bar to any warrant, suit, or other process or proceeding for the collection or legal enforcement thereof, or for damages under and by reason of the provisions of any statutory enactment giving a right of action or remedy for the results of the said personal injury sustained by me, which may be instituted by me, or any person or persons claiming under, by, or through me.    And this shall further operate in full discharge, satisfaction, compromise, settlement, and bar of any claim, demand, warrant, suit, or proceeding which may have

heretofore been brought against said companies by me, or any judgment, order, or decree which I may heretofore have obtained against said companies, or either of them, for any sum purporting to arise or grow out of the claim or demand set forth above.

"Given under my hand this eighth day of August, 1887.

"P. H. PRICE.

"Witness: D. E. BRYAN.

"I certify that the above account is correct.

"G. R. TALCOTT, Supt.

"The above has been examined by me, and is hereby approved.

"E. B. THOMAS,

"Gen'l Manag'r.

"I certify that the above has been examined by me, found correct, and duly registered in the auditor's office. Approved for payment.

"E. A. BARBER, Comptroller.

"Received August, 1887, of the treasurer of the Richmond & Danville Railroad Co. three hundred and ninety dollars in full for above account.

"$390.00.            P. H. PRICE."

Plaintiff objected to the introduction of this paper, and the objection was sustained, the trial judge saying:

After considering this agreement I have come to the conclusion that the paper is not admissible in evidence. I think that the weight of authority, as well as the reading of the statute, shows that no contract which was made by the deceased in a compromise of the injury could affect the beneficiaries who are given a new and distinct action. The exception in the statute is only one, that is the exception where the injured party has brought action and obtained judgment in his life-time. It is not sufficient to say that a compromise is the equivalent to that, and it may be illustrated in this way. If the railroad company had had a bond of indemnity against all suits and judgments obtained by the deceased, they could not have set up a voluntary payment made by the deceased. The construction of the statute must be the same as the construction of such a covenant. It seems to

me—I am satisfied—that paper can have no effect in this case for that reason.

The defendant excepted, and after verdict for plaintiff for $6,974, appealed, alleging, as one of its grounds, error in excluding this release.

*Mr. B. L. Abney,* for appellant.

*Messrs. Melton & Melton* and *R. W. Shand,* contra.

December 16, 1890. The opinion of the court was delivered by

MR. JUSTICE McIVER. This was an action brought by the plaintiff, as administratrix of Philip H. Price, deceased, to recover compensation in damages for the killing of her intestate by the alleged fault of the defendant company, under the provisions of the act of 1859, now incorporated in the General Statutes as sections 2183–2186. The defendant, after denying all allegations of negligence, for a further defence, alleged that after the time of the alleged injury, and before the commencement of this action, the said intestate, for a valuable consideration, executed a paper, acknowledging full satisfaction for all damages resulting from the alleged injury, and releasing and discharging the defendant company from all liability therefor. After the plaintiff had closed her testimony, the defendant moved for a non-suit, upon the ground that there was no evidence of any negligence on the part of the defendant company, which motion was refused. The defendant then offered evidence for the purpose of showing that the deceased was injuried by reason of his own negligence, and not through any want of care on the part of the defendant company ; and also proposed to introduce the release executed by deceased prior to his death, set up as one of defences in the answer, which, upon objection from the plaintiff, was ruled to be inadmissible. There were also other questions raised as to the admissibility of testimony which, under the view we take of the effect of the release, need not be specifically mentioned.

The jury having rendered a verdict in favor of the plaintiff, the defendant appeals upon the several grounds set out in the record, which need not be repeated here, as we think the leading

and·controlling question in the case is as to the admissibility and effect of the release above mentioned. The undisputed facts are that plaintiff's intestate received the injury complained of on the 18th of February, 1887, from the effects of which he died on the        day of November, 1887 ; and that in the meantime, to wit, on the 8th of August, 1887, the intestate executed the release in question. So the practical inquiry in this case is, whether an action of this kind can · be maintained under our statute, where the party injured has, prior to his death, released his right of action.

The two sections upon which, in our judgment, this question turns, read as follows:

"Sec. 2183. Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every case, the person or corporation who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony."

"Sec. 2186. The provisions of the three preceding sections of this chapter shall not apply to any case where the person injured has, for such injury, brought action which has proceeded to trial and final judgment before his or her death."

It seems to us that, by the terms of section 2183, the capacity of the deceased to maintain an action. based upon the injury which caused his death, is made the test of the right of the administrator to maintain the action provided for by the statute. Hence if the deceased has debarred himself by his contributory negligence, or by any other cause, from maintaining his action, based upon the injury which caused his death, it follows, necessarily, that his administrator is likewise barred of his right of action, which would otherwise be secured to him by the statute. In all cases like the present, the controlling question, therefore, is whether the deceased, if he had not died, could have maintained the action. It seems to us clear, therefore, that the Circuit Judge erred in refus-

ing to receive in evidence the release offered by the defendant; for it cannot be doubted that if the deceased had not died, and such 'release had been pleaded and proved in an action instituted by him to recover damages for the injury alleged to have been done him by the wrongful act of the defendant, it would have been a bar to such action, unless it had been made to appear that such release was obtained by fraud or duress. So far as we are informed, we have no authoritative construction of the provisions of this statute by the courts of this State, and it cannot be denied that the cases elsewhere, upon similar statutes, are somewhat conflicting. But the construction which we have adopted seems to us to be the only legitimate one which can be deduced from the terms of the statute, and it has the support of high authority, both in decided cases and in the treatises of eminent authors. See *Read* v. *Great Eastern Railway Co.*, Law R., 3, Q. B., 555 ; *Senior* v. *Ward*, 102 E. C. L. R., 392 ; *Griffith* v. *The Earle of Dudley*, Law R., 9, Q. B., 357 ; *Littlewood* v. *The Mayor of New York*, 89 N. Y., 24 ; Cooley on Torts, 263–4 ; 2 Redf. Rail., 250 (4th edit.) ; Pierce on Railroads, 392 ; Patterson Railway Law, 410–508 ; Sher. & Redf. Neg., § 301 ; 2 Thomps. Neg., 1286.

It is contended, however, that the provisions of section 2186 render it necessary to place a different construction upon section 2183 from that which has been applied elsewhere to similar statutes, because, it is urged, that section 2186 excluding a right of action in the case there specified, implies that there is no such exclusion in any other case under the maxim *expressio unius est exclusio alterius.* Such does not seem to be either the form or intent of section 2186. It does not purport to constitute an exception to any previous general declaration. On the contrary, its real object was to prevent a double remedy for the same wrongful act in any possible case. A right of action having been secured to the administrator in all cases in which an action might have been maintained by the deceased, if he had not died, it might have been contended that the administrator could still bring his action, even though the deceased had, in his life-time, brought his action and recovered judgment, because the test of the right of the administrator to maintain his action being the right

of the deceased to recover, which had been demonstrated by his recovery of judgment in his life-time, would, so far from barring, establish the right of the administrator to recover, and hence to avoid this double liability for the same wrongful act, the provisions of section 2186 were inserted, not as an exception, but as a separate section.

We have not deemed it necessary to go into the question, much discussed elsewhere, as to whether the statute gives a new cause of action, or simply continues the original cause of action, accruing to the party injured, which would otherwise terminate with his life, enlarging its scope so as to embrace compensation for the injury resulting from the death; for our conclusion is drawn from the terms of the statute, as evidencing the true intent of the legislature. We may say, however, that if the purpose was to create a new and independent cause of action, it is a little singular that the legislature should expressly provide, as it has done in section 2186, for the defeat of one cause of action accruing to one person, by the enforcement of another cause of action which had accrued to another person. It seems to us, therefore, that the provisions of section 2186, so far from weakening, rather confirm our view of the true intent and meaning of the statute.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case be remanded to that court for a new trial.