Marjorie WENDT, Dale Wendt, Individually, and Dale Wendt, as Administrator of the Estate of Neil Wendt, Deceased, Plaintiffs,

v.

Carl F. LILLO and Stenson Bros., Inc., Defendants.

Civ. No. 678.

United States District Court
N. D. Iowa,
Cedar Rapids Division.

April 4, 1960.

Wayne C. Collins, Charles A. Hastings (of Elliott, Shuttleworth & Ingersoll), Cedar Rapids, Iowa, for plaintiffs.

E. H. Wadsworth (of Barnes, Wadsworth, Elderkin, Locher & Pirnie), Cedar Rapids, Iowa, for defendants.

GRAVEN, District Judge.

On July 17, 1958, in Linn County, Iowa, a collision occurred between a motor vehicle owned by the defendant Stenson Bros., Inc., and operated by Carl F. Lillo, one of its employees, and a motor vehicle owned by the plaintiff Dale Wendt and operated by his wife, the plaintiff Marjorie Wendt. The plaintiffs Dale Wendt and Marjorie Wendt are residents of Delaware County, Iowa, and are citi-

zens of the State of Iowa. The defendant Carl F. Lillo is a citizen of the State of Minnesota. The defendant Stenson Bros., Inc., is a corporation duly organized and existing under the laws of the State of Minnesota. In February, 1960, the plaintiffs above named instituted an action against the defendants in the District Court of Iowa in and for Linn County. That action was removed to this Court.

The complaint is in three counts. In Counts I and II the plaintiffs Marjorie Wendt and Dale Wendt seek to recover the damages alleged to have been sustained by them as a result of that collision. The defendants have made answer to those counts. In Count III Dale Wendt, as administrator of the estate of Neil Wendt, seeks to recover for the death of that decedent. In that count it is alleged that at the time of the collision Neil Wendt, a viable infant, was a passenger in the Wendt motor vehicle and that personal injury received by him in the collision resulted in his death. The defendants have moved to dismiss Count III. That motion is the subject of this opinion. The ground of the motion is that under the applicable law an action may not be maintained for the death of an unborn child. The three counts constitute three separate claims. Under the usual procedure in this District, the three claims if proceeded on by separate actions would have been consolidated for trial. Therefore, the grouping of the three claims in one action is not of substantive significance. For convenience in reference, Dale Wendt, as administrator of the estate of Neil Wendt, will be referred to as the plaintiff.

Count III allegedly has to do with a viable infant. In the case of West v. McCoy, 1958, 233 S.C. 369, 105 S.E.2d 88, the Supreme Court of South Carolina stated (at pages 90–91 of 105 S.E.2d):

"There is a medical distinction between the term 'embryo' and the phrase 'viable fetus'. The embryo is the fetus in the earliest stage of development but the expression 'viable fetus' means the child has reached a stage of development where it can live outside the female body as well as within it. A fetus generally becomes a viable child between the sixth and seventh month of its existence. * * * "

In Prosser, Law of Torts, p. 175, footnote 78 (2d Ed. 1955), it is stated that viability is a relative matter depending on many other factors as well as the age of the fetus. For the purposes of this motion it is assumed that the unborn child, Neil Wendt, had reached the stage of viability. There is a further stage of development, designated as the independent circulation stage; i. e., where the child's blood circulation becomes independent of its mother's blood circulation. State v. Winthrop, 1876, 43 Iowa 519, 22 Am.Rep. 257.

In the present case jurisdiction is based upon diversity of citizenship, and the Iowa law is applicable. Erie Railroad Company v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. It appears that the Iowa Supreme Court has never directly passed on the question here presented. It further appears that the courts in other jurisdictions are in sharp disagreement on the question. The subject of prenatal injury as ground for an action has been extensively dealt with in the annotations to the cases of Woods v. Lancet, 1951, 303 N.Y. 349, 102 N.E.2d 691, 27 A.L.R.2d 1250; Williams v. Marion Rapid Transit, Inc., 1949, 152 Ohio St. 114, 87 N.E.2d 334, 10 A.L.R.2d 1051; Verkennes v. Corniea, 1949, 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634. There is an exhaustive comment on Rights of Action For Prenatal Injuries in 3 Drake Law Review 72 (1954), supplemented in 6 Drake Law Review 55 (1958). The subject is noted in 3 Iowa L.Bull. 128 (1917).

The subject of prenatal injuries encompasses a number of situations. The mother may be involved in a negligently caused mishap while the fetus is in the embryo stage. Such a mishap may occur while the fetus is in the viable stage. Such mishap may have different consequences. The viable infant may be born

and live but be deformed. The viable infant may be born alive and then die. The viable infant may be born dead. Apparently such was the situation in the present case.

The Iowa cases cited by the parties as being relevant will be first considered. In the case of Rowland v. Rowland, 1853, 4 G. Greene 183, a posthumous child was born to the widow of a man who had died intestate. The child lived for four or five months after its birth. It was held that the child inherited from his father. Thus, the child was, to a certain extent, regarded as in being at the time of his father's death.

In the case of State v. Winthrop, 1876, 43 Iowa 519, 22 Am.Rep. 257, a physician who attended a woman in childbirth was charged with producing the death of the child and was convicted of manslaughter. The conviction was reversed. The Iowa Court held that in order for the defendant to be guilty of homicide it was necessary for the State to establish that the infant had an independent circulation. The decision of the Iowa Court on the particular point is in accord with the decisions of other courts in similar cases. See cases cited in 3 Drake Law Review 72, 79 (1954).

In the case of Kansz v. Ryan, 1879, 51 Iowa 232, 1 N.W. 485, the plaintiff sought to recover damages against a physician who, among other things, was charged with having produced a miscarriage to the former's wife. A demurrer to the plaintiff's petition was sustained by the trial court. On appeal that ruling was affirmed. The Court stated (at page 487 of 1 N.W.):

"The second count claims to recover on the ground that plaintiff was deprived of offspring by defendant's acts. Regarding, for the purpose of this case, the rights of the father as to an infant *in ventre sa mere* to be the same as though the offspring were in life—a point that we do not determine—he cannot recover for injury to such offspring, except for the loss of service resulting therefrom. Addison on Torts, p. 907.

Plaintiff does not, and cannot, claim for loss of services of an unborn child. Whether he could have claimed for future services to be rendered, after the birth of the child, we need not consider, for no such claim is found in the petition. We may suggest that such a claim for damages would be based upon very remote and uncertain consequences of the act complained of; it is hardly probable that it would be allowed by the law. * * *."

The defendants cite the case of Elmore v. Des Moines City Ry. Co., 1929, 207 Iowa 862, 224 N.W. 28, in support of their position. In that case the plaintiff, a married woman, brought an action for personal injuries alleged to have been caused to her while a passenger on a public bus by reason of the negligence of the driver thereof. In her action she included a claim for damages for miscarriage resulting in her child's being born one month premature. The child was obviously viable at the time of the miscarriage. The jury's award of $10,000, which apparently included damages for the miscarriage, was affirmed on appeal. The case is not helpful because the Iowa Court in its opinion did not discuss the propriety of the award to the mother because of the premature birth of the child. It has generally been recognized that a pregnant woman who has sustained personal injury resulting in a miscarriage may be awarded damages for physical and mental suffering and physical impairment occasioned by the miscarriage. 15 Am.Jur., Damages, Sec. 82, p. 490.

The case of Wehrman v. Farmers' & Merchants' Sav. Bank of Durant, 1935, 221 Iowa 249, 259 N.W. 564, 266 N.W. 290, involved the Iowa anti-lapse statute. In that case the decedent's daughter died during a Caesarean operation in which twins were removed. The attending physicians and nurses were unable to state whether the twins were born dead or alive, but did state they were dead twenty minutes after birth. If the twins were born alive, certain property would go to the son-in-law; if born dead, that

property would go to collateral relatives. The Iowa Court held that the burden was upon the collateral relatives to establish that the twins were born dead and that they had failed to so establish. In its opinion in that case the Iowa Court stated (at page 569 of 259 N.W.):

> "The functioning, or beating, of the heart of an infant, after delivery, establishing an independent circulation of the blood, has been approved by this court as the criterion by which is determined whether the infant ever acquired existence as an individual being. State v. Winthrop, 43 Iowa 519, 22 Am.Rep. 257.
> * * * "

It is the claim of the plaintiff that the statement just set out constitutes dictum. It would seem that the statement could be regarded at least as "considered" dictum. That matter will be later referred to.

█ It is the claim of the plaintiff that Section 611.20, Code of Iowa 1958, I.C.A., gives support to his position. That section is as follows:

> "Actions survive. All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same."

That statute is known as the Iowa survival statute. Under that statute, unlike Lord Campbell's Act, no new cause of action is created by a wrongful death; rather, the cause of action accruing to the injured person survives his death. See cases cited in Van Wie v. United States, D.C.Iowa 1948, 77 F.Supp. 22, 47. Thus, the statute only leads back to the question whether the viable infant had a cause of action.

██ The administrator or executor of the decedent is the only party who can maintain an action on the surviving cause. Jensen v. Chicago, M. & St. P. Ry. Co., 1924, 198 Iowa 1267, 201 N.W 34. It is the claim of the plaintiff that the fact that the District Court of Iowa appointed him administrator of the infant's estate constituted legal recognition by that Court that the infant had acquired an existence as an individual being. In Iowa there is but one district court. It is known as the District Court of Iowa. It is a court of original and general jurisdiction. In Iowa, different from most states, there is no separate probate court.

Under Section 633.45, Code of Iowa 1958, I.C.A., letters of administration are issued by the Clerk of the District Court of Iowa. The letters of administration in the present case, as in all uncontested applications, were issued ex parte by the Clerk. It is the view of the Court that such ex parte action is not determinative of the question of the right of the plaintiff to maintain the present action.

In the present case the Court is presented with the problem of ascertaining the law of a state on a question which has not been passed on directly at an appellate level. The problem is a difficult one. The United States Court of Appeals for this Circuit in the case of Harlow v. Ryland, 8 Cir., 1949, 172 F.2d 784, at page 786, stated that a federal district court, in cases where state law is applicable, must determine "questions of state law no matter how doubtful, difficult or speculative they may be."

The plaintiff argues that the rule contended for by him is the better rule. The defendants argue that the rule contended for by them is the better rule.

In the case of West v. American Telephone & Telegraph Co., 1940, 311 U.S. 223, at page 237, 61 S.Ct. 179, at page 183, 85 L.Ed. 139, 132 A.L.R. 956, the Court stated that where state law is applicable it is not within the province of a federal court to prescribe what it deems to be the superior rule from the viewpoint of general law. The Court further stated that where state law is applicable the sole duty of a federal court is to ascertain what the state law is and apply it. The Court further stated that in ascertaining state law use should be made of all available data. Sources which are regarded by a number of fed-

eral courts as constituting such data will next be considered.

◼ It has been held that in the absence of direct local authority as to state law it is proper to consider the Restatement of the Law as evidence of the law of the state. Venuto v. Robinson, 3 Cir., 1941, 118 F.2d 679, 682, certiorari denied sub nom. C. A. Ross, Agent, Inc. v. Venuto, 1941, 314 U.S. 627, 62 S.Ct. 58, 86 L.Ed. 504. In the case of Pierce v. Ford Motor Co., 4 Cir., 1951, 190 F.2d 910, which was a case involving a question of Iowa law which had not been directly passed on by the Iowa Supreme Court, it was concluded that that Court would follow the rule expressed in the Restatement of the Law. Restatement, Torts, Section 869 (1939) is as follows:

"A person who negligently causes harm to an unborn child is not liable to such child for the harm.

"*Comment*:

"*a.* The rule stated in this Section is applicable only to unintended harms to the mother or to the child. It prevents recovery by the child after its birth for any of the consequences of negligent conduct before birth. On the other hand, in an action by the mother for a tort which has caused her physical harm, damages can be included for the pain, suffering and mental distress caused by the death of the child before birth or immediately afterwards.

"A person designated by statute to maintain an action for causing death can not maintain an action for a negligent act committed before the birth of a child which causes the death of the child either before or after birth.

"*Caveat*: The Institute takes no position upon the question whether there is liability to a child hurt while unborn by a person who intentionally or recklessly and without excuse harms the mother or child."

◼ It was heretofore noted that the United States Supreme Court, in the case of West v. American Telephone & Telegraph Co., supra, stated that a federal court in ascertaining state law should make use of all available data. Law review writings as to the law of a state may be considered as constituting such data. McIntyre v. Kansas City Coca Cola Bottling Co., D.C.1949, 85 F.Supp. 708, 713. See President and Directors of Georgetown College v. Hughes, 1942, 76 U.S.App.D.C. 123, 130 F.2d 810, 812. The only law review writing relating to the Iowa law on the subject is the comment in 3 Drake Law Review 72, heretofore referred to. On page 80 of that comment, following a discussion of the Iowa cases, it is stated:

"Iowa thus has no precedent clearly barring a right of action to the child injured while viable and later born alive, although in several cases the court has assumed that the child did not have 'separate existence' until birth. It would easily be possible for the Iowa court to adopt the position taken in the Woods case."

The Woods case referred to is Woods v. Lancet, supra. In that case a viable child sustained an injury. The child lived, but was permanently deformed because of the injury. The New York Court of Appeals held that he could maintain an action for the injury.

◼ It was heretofore noted that in the case of Wehrman v. Farmers' & Merchants' Sav. Bank of Durant, supra, the Iowa Court stated, by way of what is regarded as "considered dictum", that independent circulation of blood on the part of the infant was the criterion for determining whether the infant ever acquired an existence as an individual being. In the case of Brink's, Inc. v. Hoyt, 8 Cir., 1950, 179 F.2d 355, the United States Court of Appeals for this Circuit stated (at page 358):

" 'considered dictum * * * should not be ignored when a federal court is attempting to construe or ascertain the meaning of the local law, * * *.' "

It has been held that where state law is in doubt a federal court is justified in assuming that the supreme court of the state will follow the majority rule. Preston v. Aetna Life Ins. Co., 7 Cir., 1949, 174 F.2d 10, 16. In 1950, 10 A.L. R.2d 1060, it is stated:

"The rule, as supported by the numerical weight of authority, is that a child or its personal representative, in the absence of statute, has no right of action for prenatal injuries."

In 1950, 10 A.L.R.2d 640, it is stated that cases concerning the right to maintain an action for the wrongful death of an unborn child are few in number but that the majority rule is against the maintenance of such an action. In 1953, 27 A.L.R.2d 1256, it is stated that the numerical weight of authority is that a child or its personal representative, in the absence of statute, has no right of action for prenatal injuries.

The courts which have permitted actions to be maintained for prenatal injuries have generally limited such actions to viable infants, although there has been some indication of a willingness to extend recovery to nonviable infants. Prosser, Law of Torts, p. 175 (2d Ed. 1955).

Some courts permit recovery where a viable infant is born dead following a prenatal injury. Verkennes v. Corniea, 1949, 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634. Other courts deny recovery in such a case. Drabbels v. Skelly Oil Co., 1951, 155 Neb. 17, 50 N.W.2d 229. It would seem that in general the division among the courts does not turn on the narrow question of whether the particular viable infant did or did not live following birth, but on the broader question of whether recovery should be permitted at all for prenatal injury to a viable child. The writers and annotators in this field generally treat all the cases permitting recovery for prenatal injury to a viable child in any situation as constituting one line of authority and the cases not in accord as constituting the other line of authority. The division between the two lines of authority is best indicated by the reasons given by the courts for not allowing such actions to be maintained. In Prosser, Law of Torts, p. 174 (2d Ed. 1955), the author, in discussing the cases holding that such actions could not be maintained, stated:

"Two reasons usually were given: First, that the defendant could owe no duty of conduct to a person who was not in existence at the time of his action; and second, that the difficulty of proving any causal connection between negligence and damage was too great, and there was too much of danger of fictitious claims."

The first case in this country passing squarely on the question of the right to recover for prenatal injury was Dietrich v. Inhabitants of Northampton, 1884, 138 Mass. 14, 52 Am.Rep. 242. In that case recovery was sought for the death of an infant, born alive, allegedly caused by the defendant's negligence. It was held that under the common law no action could be maintained for the death of the infant. The opinion was by Justice Holmes. In the case of Damasiewicz v. Gorsuch, 1951, 197 Md. 417, 79 A.2d 550, there is an extended discussion of the English cases preceding the case of Dietrich v. Inhabitants of Northampton. For more than sixty years following the decision in that case, the courts in this country when directly presented with the question of the right of an infant to maintain an action for prenatal injury apparently without exception held that no such action could be maintained. The breakaway from that rule occurred in 1946 in the case of Bonbrest v. Kotz, D.C. D.C., 65 F.Supp. 138. Thereafter a number of the courts which had previously ruled that no such action could be maintained overruled their previous decisions and held that such action could be maintained. Williams v. Marion Rapid Transit, Inc., 1949, 152 Ohio St. 114, 87 N.E.2d 334, 10 A.L.R.2d 1051; Woods v. Lancet, 1951, 303 N.Y. 349, 102 N.E. 2d 691, 27 A.L.R.2d 1250; Amann v. Faidy, 1953, 415 Ill. 422, 114 N.E.2d 412; Steggall v. Morris, 1953, 363 Mo. 1224,

258 S.W.2d 577. However, two courts which held that such action could not be maintained have reconsidered the question since 1946 and still held that such an action could not be maintained. Norman v. Murphy, 1954, 124 Cal.App.2d 95, 268 P.2d 178; Bliss v. Passanesi, 1950, 326 Mass. 461, 95 N.E.2d 206; Cavanaugh v. First National Stores, Inc., 1952, 329 Mass. 179, 107 N.E.2d 307. In the case of Turnknett v. Keaton, 5 Cir., 1959, 266 F.2d 572, jurisdiction was based upon diversity of citizenship and Texas law was applicable. Recovery was sought for injuries to an unborn child. Texas decisions denied recovery in such cases. The Court deemed itself bound by those decisions and recovery was denied. In the case of West v. McCoy, 1958, 233 S.C. 369, 105 S.E.2d 88, it was held that recovery could not be had for an infant not shown to have reached the viable stage. In 1951 the Nebraska Court, passing on the question for the first time, held that an action for the death of an unborn infant could not be maintained. Drabbels v. Skelly Oil Co., 155 Neb. 17, 50 N.W.2d 229. In an article entitled, The Extension Of Tort Liability In The Field Of Pre-Natal Injuries, McBride & Norvell, 26 Insurance Counsel Journal 148 (1959), the authors stated (p. 151):

"Summarizing, there are now *thirteen* jurisdictions which have permitted recovery since 1946. These states are Connecticut, Delaware, Georgia, Illinois, Maryland, Minnesota, Mississippi, Missouri, New Hampshire, New York, Ohio, Oregon and the District of Columbia. The trend is so rapid and pronounced that it will probably be followed shortly in other states as the issue presents itself to the appellate courts. * * * "

That there may be a recovery for prenatal injury was also recognized in Mitchell v. Couch, Ky.1955, 285 S.W.2d 901 and Valence v. Louisiana Power & Light Co., La.App.1951, 50 So.2d 847. See Pan-American Casualty Co. v. Reed, 5 Cir., 1957, 240 F.2d 336, certiorari denied,

1957, 355 U.S. 819, 78 S.Ct. 24, 2 L.Ed. 2d 35. The Supreme Courts of Wisconsin and Michigan have both apparently abandoned their previous rule denying recovery. La Blue v. Specker, 1960, 358 Mich. 558, 100 N.W.2d 445; Puhl v. Milwaukee Automobile Ins. Co., 1959, 8 Wis.2d 343, 99 N.W.2d 163. Both of the latter cases contain an extended discussion of the present state of the law on the subject.

In the annotation in 27 A.L.R.2d 1256, which was published in 1953, it is stated (at page 1259):

"It appears worthy to note that at the present time there are ten jurisdictions in which a right of action for prenatal injuries has been denied and seven in which such an action has been recognized. * * "

Since 1953 so many courts have recognized the right to maintain an action for prenatal injuries that the rule denying recovery can no longer be said to be the majority rule. The Iowa Supreme Court, as heretofore noted, has not yet directly passed on the question. Since 1946, when faced with the question for the first time, the overwhelming number of the courts have held or recognized that an action for prenatal injury to a viable infant could be maintained.

The dictum of the Iowa Supreme Court in Wehrman v. Farmers' & Merchants' Sav. Bank of Durant, supra, to the effect that an infant does not have existence as an individual being until it has an independent blood circulation was stated in 1935. The Restatement rule (Restatement, Torts, Sec. 869) that recovery can not be had for prenatal injuries was stated in 1939. Both in 1935 and 1939 the unanimous rule was that such recovery could not be had.

Seldom in the law has there been such an overwhelming trend in such a relatively short period of time as there has been in the trend toward allowing recovery for prenatal injuries to a viable infant.

██ In view of that trend, it is the view and holding of the Court that if the

question were presented to the Iowa Supreme Court it would hold that the plaintiffs could maintain the action here under consideration.

It Is Hereby Ordered that the motion of the defendants to dismiss Count III of the complaint be and the same is hereby overruled and denied.