**Albert J. TODD, as Administrator of the Estate of Baby Todd, Deceased, Appellant,**

v.

**SANDIDGE CONSTRUCTION COMPANY, a corporation, Appellee.**

No. 9299.

United States Court of Appeals Fourth Circuit.

Argued April 13, 1964.

Decided Aug. 3, 1964.

James T. Lee, Conway S. C., for appellant.

Nathaniel L. Barnwell and Ben Scott Whaley, Charleston, S. C. (James B. Moore, Georgetown, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

An unborn child's death as a result of a tortious injury to her mother does not give a cause of action under the wrongful death act of South Carolina,[1] the District Court has held, if the child was not born alive, although the child was viable at the time of injury. The decision was made on motion of the defendant tortfeasor to dismiss the complaint of the administrator of the child's estate. We reverse.

1. Section 10–1951, South Carolina Code of Laws (1962).

On January 9, 1963 Baby Todd was a live and healthy unborn child of 8 months gestation. While a passenger in an automobile on that day, her mother was violently shaken and suffered serious injury in South Carolina when the front of the car plunged into an opening in a highway left unguarded through the neglect of the defendant-appellee, Sandidge Construction Company. As an immediate result, the child died on January 10, 1963, and was delivered dead through a Caesarian section on January 14. These facts were confessed by the motion to dismiss.

Appellant and father of the child, Albert J. Todd, qualified in South Carolina as administrator of the estate of Baby Todd and brought this action under the State Act, reading as follows:

"Whenever the death of a person shall be caused by a wrongful act, neglect or default of another and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony."

■ The right of an administrator to sue for wrongful death in South Carolina depends upon whether the decedent could have sued for the injury had he survived. Price v. Richmond & Danville Railroad Co., 33 S.C. 556, 12 S.E. 413 (1890). We think resolution of the present question hinges on interpretation of the statute, *supra*, in respect to the meaning of "a person".

South Carolina doctrine on the right of action of an unborn child has not been expressly expanded to comprehend the instant circumstances. In West v. McCoy, 233 S.C. 369, 105 S.E.2d 88 (1958), the Court held that an unborn child of 5½ months pregnancy was not a person in

being for whose death recovery could be made. There the child was *not viable* at the time of the injury, nor did it survive birth. In the first feature the case differs from the present. But in Hall v. Murphy, 236 S.C. 257, 113 S.E.2d 790 (1960) the Supreme Court of South Carolina recognized a right of action for the death of a *viable* child resulting from a prenatal injury to its mother where after a premature birth the child *lived* for 4 hours. The only feature distinguishing that case from ours is the live birth.

Thus the South Carolina Court has accorded an action to an injured unborn, viable child living at birth. It has not been asked to go further and say whether the right vanished with lifeless birth. The District Judge felt compelled to that conclusion by the West case, supra, 105 S.E.2d 88. However, we do not believe the State Court intended to raise the bar to the point of disallowing a cause of action to a viable child injured en ventre sa mere when, as here, the injury was the very reason the child did not survive.

To begin with, the Supreme Court of South Carolina has treated an unborn but viable child as a person and personality. Justice Oxner enunciated this concept in Hall, supra, 236 S.C. 257, 113 S.E.2d 790, 793, in closely knitted and notable logic, saying:

"We have no difficulty in concluding that a foetus having reached that period of prenatal maturity *where it is capable of independent life apart from its mother is a person* and if such a child is injured, it may after birth maintain an action for such injuries. A few courts have gone further and held that such an action may be maintained even if the infant had not reached the state of a viable foetus at the time of the injury. [Citations omitted.] This question is not presented and we intimate no opinion thereabout. Our decision is limited to liability for prenatal injuries to a viable child born alive." (Accent added.)

To balance the right of action upon whether the child, fatally injured by the

negligence of another, is born dead or alive seems not only an artificial demarcation but unjust as well. To illustrate, if the trauma is severe enough to kill the child, then there could be no recovery; but if less serious, allowing the child to survive, there might be recovery. Again, if the fatality was immediate, the suit could not prevail, but if the death was protracted by a few hours, even minutes, beyond birth, the claim could succeed. Practically, it would mean that the graver the harm the better the chance of immunity. Moreover, it allows the act of the tortfeasor to foreclose his own liability—the life of the action would be in his hands. These results have a sound cogency, quite aside from the general reasons justifying the death statutes, for the argument that those deprived of their own by death should not also be deprived of all recompense by the death.

Once the viable foetus is accorded the status of a person in esse, logic would constitute its wrongful death a cause of action under the South Carolina statute, for "if death had not ensued", to quote the law, the child would have been "entitled * * * to maintain an action and recover damages". This is vouched in Hall v. Murphy, supra, 236 S.C. 257, 113 S.E.2d 790. The common law attributed an existence to a child prior to birth in respect to property rights, as Blackstone states, I Commentaries on the Law of England, p. 130:

> "Life is the immediate gift of God, a right inherent by nature in every individual; and it begins in contemplation of law as soon as an infant is able to stir in the mother's womb. * * *
>
> "An infant in ventra sa mere, or in the mother's womb, is supposed in law to be born for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were then actually born. And in

this point the civil law agrees with ours." [Annotations omitted.]

Semble, if his property may be preserved for him before birth, his life should be entitled to no less protection.

Our furtherance of the reasoning of the Supreme Court of South Carolina is precedented by the Court of Appeals of Maryland in State, Use of Odham v. Sherman (1964), 234 Md. 179, 198 A.2d 71. After searchingly examining the question, the Court directed recovery for the death of a stillborn child caused by a tortious pre-birth injury. A like conclusion was reached in Wendt v. Lillo, 182 F.Supp. 56, 61 (D.C.N.D.Iowa 1960), Judge Graven writing trenchantly under the law of Iowa. Additional word from the Supreme Court of South Carolina would have been a welcome guide, but we believe we are pursuing its policy. As that court and the Maryland court have noted, opinion on the subject is divided. See too, Gullborg v. Rizzo (3 Cir. 1964), 331 F.2d 557; but see Carroll v. Skloff, 415 Pa. 47, 202 A.2d 9 (1964). Unable to embellish the learning of these decisions, we rest our determination upon the statutory and decisional law of South Carolina. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Of course a rule fixing survival as the determinant, rather than viability with which the Supreme Court of South Carolina began its resolutions of the liability issue, has the appeal of simplicity. It might aid the judiciary but hardly justice.

 It is suggested that compensation for the loss of the child can be recovered by the mother as part of her reimbursement for physical and mental suffering incident to the still or premature birth. But the South Carolina death statute is of wider purview. It encompasses loss by the parents of the companionship and affection of the child. § 10–1954, South Carolina Code of Laws (1962); Johnson v. Charleston & Western Carolina Ry., 234 S.C. 448, 108 S.E.2d 777 (1959); Mishoe v. Atlantic Coast Line R.R., 186 S.C. 402, 197 S.E. 97 (1938). Pecuniary

damages to the mother in her action for injuries to herself would not seem to include this intangible item, and certainly not the father's anguish. The weight to be given to these items, however, is for the trier of the case on the merits, not a factor in the right to maintain the action.

The complaint of the appellant-administrator of Baby Todd stated a cause of action, and it should not have been dismissed as insufficient in law. The action will be remanded for trial.

Reversed and remanded.

HAYNSWORTH, Circuit Judge, (dissenting):

My Brother Bryan expounds with his accustomed excellence those considerations which tend to favor allowance of an action for wrongful death when a viable child is stillborn as a result of prenatal injury, and he predicts that South Carolina's Supreme Court will follow his lead. His view suffers from a dearth of supporting materials, however, and I do not think it necessarily the more enlightened. I am constrained to predict that if this case were before the Supreme Court of South Carolina, it would not follow the approach of the majority.

We are not to decide this case on the basis of our notions, or upon our evaluation of the social and legal considerations which lie upon either side of the problem. We are not to declare what we think the law ought to be, but, taking our cue solely from what the South Carolina Supreme Court has done and said in the past, we are required to make an informed prediction as to what it would do if this very case were now before it. At the same time, such a prediction can hardly be an informed one, unless made in the light of the social and legal considerations which are relevant. The majority refers to some of them. It might have explored more of them, for South Carolina's Su-

preme Court would approach a case such as this with all of them in mind. The problem can be put in context, therefore, by reference to some considerations which point away from the majority's conclusion.

The old notion that under no circumstances were injuries to a child *en ventre sa mère* compensable has long since lost its legalistic following. Only a dead and empty legalism can be arrayed against the social and legal considerations requiring the allowance of an action by a child who is born to a long and expensive life as a mental or physical cripple because of prenatal injuries suffered by him through the tortious conduct of another. The responsibility for the suffering of such a child and the expense of its care should be laid upon the wrongdoer who caused its affliction and not upon its innocent parents.

This duty of the tortfeasor to pay compensation for the injury he inflicts upon the unborn child who is later born alive seems to me not dependent upon the viability of the child at the time of injury. If, in fact, the child is born alive and if, because of injury, it suffers and occasions extraordinary expense, no logical reason occurs to me why the wrongdoer should escape because the child was not viable when injured, unless the injury occurred so soon after conception that the problem of determining the causal relation between the injury and the child's defect becomes insurmountable.

I recognize, of course, that some courts have either limited recovery cases in which the child was viable or quick at the time of injury, or have announced the rule of recovery in cases in which it happened that the child was viable or quick at the time of injury. Other courts, however, have refused to thus limit the rule.[1]

What in reason then has viability at the time of injury[2] got to do with the

1. Sana v. Brown, 35 Ill.App.2d 425, 183 N.E.2d 187; Sinkler v. Kneale, 401 Pa. 267, 164 A.2d 93; Smith v. Brennan, 31 N.J. 353, 157 A.2d 497; Bennett v. Hymers, 101 N.H. 483, 147 A.2d 108; Hornbuckle v. Plantation Pipe Line Co.,

212 Ga. 504, 93 S.E.2d 727; Kelly v. Gregory, 282 App.Div. 542, 125 N.Y.S. 2d 696.

2. Viability at the time of birth, of course, is essential to a "live birth," for that

problem? The answer, plainly, is nothing. To one so concerned with the foreclosure of all possibility of fictitious claims as to feel compelled to draw arbitrarily an arbitrary line, the notion of viability at the time of injury as a limiting requirement might have some appeal, but quickness would be much more useful for his purpose. The mother knows and tells when the child quickens, but its attainment of viability is an event which passes unnoticed, and, unless birth follows soon after, cannot be later determined. Relevance of viability at the time of injury can rest only upon a peg of arbitrariness, and that not even the more manageable one. Use of viability at the time of injury as the touchstone of decision is without support in reason. It flies in the face of social considerations which cry for the allowance of a recovery for the benefit of a child born to go through life as a cripple.

Attributing relevance to viability at the time of injury is not only unreasoned; it is wholly without ancient precedent. Whether or not a fetus was quick when intentionally destroyed once bore upon the nature and degree of the crime,[3] but for purposes of estates and inheritances the common law regarded the child as a person in being from the moment of conception, if in the child's interest to do so, but only if there followed a live birth.[4] Viability, historically and in reason, is an irrelevance; viability, that is, at the time of injury or of another's death or of any other event than the live birth of the child.

Treatment of viability at the time of injury as significant is a relic of a rela-

tively modern misunderstanding. When Mr. Justice Holmes wrote for the Supreme Judicial Court of Massachusetts in 1884 [5] he advanced as one reason for not allowing recovery for prenatal injuries the notion that, until birth, the child was a part of its mother. That notion was inconsistent with what common law precedents there were and with medical facts as they are known today.[6] Its expression, however, led those taking the first hesitant steps away from Dietrich to say with understandable restraint that a viable child, at least, was not a part of its mother.[7] Since we now know that a child is no more a part of its mother before viability than after, this relic of an invalid notion does not deserve preservation. Our steps away from Dietrich need no longer be hesitant. Indeed, it has been observed that no court which has allowed recovery for prenatal injury to a viable fetus has later declined to allow such a recovery when the injury occurred before the child became viable.[8]

It thus seems to me evident that limiting recovery in these cases to injuries suffered after the child becomes viable is a social perversion without support in reason or historical precedent. Viability of the child at the time of injury ought to be recognized as the imposter it is and sheared of all further influence upon our judgments.

Conditioning recognition of an unborn child as a live person upon a subsequent live birth, however, stands upon a very different footing. There is solid analogy for it in the common law. There is reason for it. It is consistent with social considerations.

term means that the child must not only be living at the time of birth but of sufficient maturity to have a reasonable expectation of survival apart from its mother if uninjured. The term has the same meaning in the law of property.

3. 1 Blackstone's Commentaries 125.

4. This is the rule in South Carolina. Pearson v. Carlton, 18 S.C. 47.

5. Dietrich v. Inhabitants of Northampton, 138 Mass. 14, 52 Am.Rep. 242.

6. It is now known that the fetus has a separate existence from the time of conception. The mother furnishes the fetus protection and sustenance before birth, but it develops its own circulatory system, and its physical, mental and emotional characteristics are predetermined by the alignment of genes from the two parents.

7. See Smith v. Brennan, 31 N.J. 353, 157 A.2d 497, 504–505.

8. Ibid., 157 A.2d p. 504.

Little can be said in favor of allowance of a cause of action for personal injury to a child *en ventre sa mère*, which thereafter is stillborn for some unrelated reason.[9] When the stillbirth is unrelated to the prenatal injury, the child suffers no economic loss, and it is, at least, highly dubious that it will have endured conscious pain and suffering. The majority here, of course, make no suggestion that a cause of action for personal injury in such circumstances should be recognized or allowed. Yet, and this is where I think they go awry, it is only if an action for personal injury under such circumstances would be allowed that, under their construction of the wrongful death statute, an action for wrongful death would be allowed if the death before birth resulted from the injury rather than from an unrelated cause.[10] Live birth is a prerequisite if we follow the statute's relation of the right to maintain an action for wrongful death to the right to maintain an action for personal injury. There is no right of action for personal injury if the child is stillborn for an unrelated or a related reason, and there is no action for wrongful death if it is stillborn for a related reason. If viability has any usefulness in discovering reasonable answers to the problem,—live birth is crucial.

In its social aspects, if a line is to be drawn anywhere, there is much more to be said for placing it at the point of live birth than at any other point after conception.

As noted above, when the child is born alive there are compelling reasons for allowing him to maintain an action for personal injury suffered by him when *en ventre sa mère*. Those reasons, legal and practical, are unaffected by his viability at the time of injury. Once the cause of action for personal injury matures with the live birth, it, of course, will survive a subsequent death of the child. In the event of a subsequent death after birth, too, if the result of prenatal injury, the wrongful death statute literally and unequivocally applies, and such an action may be maintained.

There are no comparable reasons for allowance of a cause of action for personal injury of a child *en ventre sa mère* which is later stillborn. If a live birth is a prerequisite to a cause of action for personal injury, it is a prerequisite to a cause of action for wrongful death, for the wrongful death statute is expressly conditioned upon the existence of a cause of action for personal injury. If the need for recognition of a cause of action for wrongful death of a stillborn child were great, then it might be said without too much illogic that the substantive right of action for personal injury of a child later stillborn exists, but may not be maintained solely because of the absence of recoverable damages. It may be interpolated here that the South Carolina cases contain no shred of a suggestion of recognition of such a need. If such a need exists, however, it exists regardless of the child's maturity at the time of injury or at the time of the stillbirth.

The longer the pregnancy, the greater the parent's expectation and the deeper the sense of loss if there is a miscarriage or the child is stillborn. The potential

9. Suppose, for instance, a prenatal injury which is not fatal. The mother recovers from her injuries and, while still carrying the child, is accidentally drowned, as a result of which the child dies before it can be removed from the lifeless body of its mother.

10. The majority's argument that recovery for graver injury should be allowed if recovery for lesser injury is permissible is a non sequitur. If fatal injury to a fetus is a graver injury than one which relegates it to a long life as a mental defective, recovery may be had in either instance if the child is born alive. If the child is stillborn, under South Carolina law as I understand it, there could be no recovery whether the injury be said to be the greater or the lesser. Whether the injury to the fetus is fatal, if there is a stillbirth for any reason, no action for personal injury of the fetus survives its death. It is entirely consistent, therefore, to say that there is no action for wrongful death of the fetus, if the injury is its cause. The rules are harmonious, and can be made to appear inharmonious, as the majority attempts, only by comparing different things and ignoring comparables.

personal loss the parents may suffer does not spring from nothingness the moment the child becomes viable. It is a progressive thing. The progress is unmarked by the attainment of viability, but it is tremendously enlarged when the child born alive is seen and embraced by its mother and, perhaps, by its father. In some circumstances, the loss of a month-old fetus may be a crushing disappointment to the prospective parents, but the loss of a child born alive and loved, even for a little while, is a cause of much greater grief.

When the child is stillborn, of course, the mother in an action for her injuries can recover the major items of damage, including compensation for her grief. If loss of the child's anticipated companionship is not technically compensable in her action, juries usually take care of the situation. The father is unlikely to have any net recoverable damages. Wright v. Hoover, 8 Cir., 329 F.2d 72. The inevitable consequence of allowance of an action for wrongful death in these circumstances will be multiple recovery for the same items of damage.

This, then is not a particularly deserving plaintiff. Neither reason, analogy nor social considerations dictate allowance of a recovery. Allowance of recovery here, however, by enthroning viability at the time of injury as the touchstone of decision may gravely embarrass recovery by highly deserving plaintiffs, living children crippled by prenatal injuries sustained before they became viable.

There are, of course, cases [11] which hold with my brothers. Generally, the opinions reaching that conclusion contain no analysis of the problem. They jump to the conclusion that recovery should be allowed in this specific situation from the premise that the modern trend is toward allowance of recovery in the broad area of prenatal injury. The premise is true and laudable, but it is not necessary to be indiscriminate to be modern. The trend should be channeled along the lines of reason and need not result in duplicating recoveries which neither legal nor social considerations dictate.

There are also cases holding that a live birth is a prerequisite to an action for personal injury sustained by a child *en ventre sa mère* [12] and, of course, for the wrongful death of such a child.[13] This is the view of such scholars as Prosser.[14] They are in keeping with recognition of the great need for allowance of an action for personal injury for the benefit of the child born alive, regardless of when the injury was sustained, and of the fact that the stillborn child has no such need.

I mention these considerations not for the purpose of suggesting that they ought to control our decision here, but simply to suggest that the South Carolina Supreme Court, when it has occasion to consider the specific question may not agree with the majority that theirs is the more enlightened view and the most reasonable

11. Gullborg v. Rizzo, 3 Cir., 331 F.2d 557; Wendt v. Lillo, D.C.N.D.Iowa, 182 F.Supp. 56; Gorke v. Le Clerc, 23 Conn. Sup. 256, 181 A.2d 448 (1962); Hale v. Manion, 189 Kan. 143, 368 P.2d 1 (1962); Mitchell v. Couch, Ky., 285 S.W.2d 901 (1955); State, Use of Odham v. Sherman, 234 Md. 179, 198 A.2d 71 (1964); Verkennes v. Corniea, 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634 (1949); Rainey v. Horn, 221 Miss. 269, 72 So. 2d 434 (1954); Stidam v. Ashmore, 109 Ohio App. 431, 167 N.E.2d 106 (1959); Poliquin v. MacDonald, 101 N.H. 104, 135 A.2d 249 (1957).

12. In re Scanelli, 208 Misc. 804, 142 N.Y.S. 2d 411 (Surr.Ct.1955); Keyes v. Construction Service, Inc., 340 Mass. 633, 165 N.E.2d 912.

13. Norman v. Murphy, 124 Cal.App.2d 95, 268 P.2d 178 (1954); Drabbels v. Skelly Oil Co., 155 Neb. 17, 50 N.W.2d 229 (1951); In re Logan's Estate, 4 Misc. 2d 283, 156 N.Y.S.2d 49 (1956), aff'd. 2 A.D.2d 842, 156 N.Y.S.2d 152, aff'd. 3 N.Y.2d 800, 166 N.Y.S.2d 3, 144 N.E. 2d 644; Muschetti v. Charles Pfizer & Co., 208 Misc. 870, 144 N.Y.S.2d 235 (1955); Howell v. Rushing, Okl., 261 P.2d 217 (1953); Carroll v. Skloff, 415 Pa. 47, 202 A.2d 9 (1964); Durrett v. Owens, 212 Tenn. 614, 371 S.W.2d 433; Hogan v. McDaniel, 204 Tenn. 235, 319 S.W.2d 221 (1958).

14. Law of Torts (2nd ed.) pp. 174, 175.

answer. I mention them also for the South Carolina Supreme Court has strongly indicated it is moving in the direction these considerations dictate.

In West v. McCoy, 233 S.C. 369, 105 S.E.2d 88, the Supreme Court of South Carolina refused to recognize a cause of action for wrongful death of a stillborn child, which at the time of injury was quick in its mother's womb, but which was probably not technically viable because only 5½ months old. The Court adverted to the fact that the child was not viable, or probably not, but the whole emphasis of the case was upon the absence of live birth. It specifically said:

" * * * The policy considerations which call for a right of action when a child survives do not necessarily apply in the absence of survival. * * * "

Interestingly, the quoted sentence was lifted by the Supreme Court of South Carolina from a law review article [15] in which it had been employed to express the author's approval of the holding of In re Scanelli, 142 N.Y.S.2d 411. In Scanelli, it was held that a live birth was essential to legal recognition of the fetus as a separate person, and that there was no right of action for personal injury to a child which was later stillborn.

In Hall v. Murphy, 236 S.C. 257, 113 S.E.2d 790, the Supreme Court of South Carolina recognized a cause of action for wrongful death of a child born alive whose death was caused by a prenatal injury. The child there was viable at the time of injury. The Court limited its holding to the actual case before it, but it referred to cases recognizing an action for wrongful death of a child born alive though the injury occurred before viability. It reserved its position on that question. Thus, in Hall as in West, the South Carolina Supreme Court adverted to the viability of the child, but its entire emphasis was upon the question of live birth.

West and Hall together dramatize the importance of a live birth. An action for wrongful death of the stillborn child was denied; one for the death of the child born alive was allowed. The fact that the West child was not viable, though quick, had nothing to do with it, and in Hall the Court expressly indicated its willingness to consider allowing an action for wrongful death of a child born alive though the injury was sustained before it was viable. Surely, it cannot be understood to have said that viability at the time of injury, rather than a live birth, was the determining factor and the crucial distinction between West and Hall when, reserving the question as unnecessary to the decision in Hall, it specifically pointed to the possibility of its holding that viability at the time of injury was wholly immaterial. If it does not so hold when a proper case comes before it, it will be the first court, in light of the Hall case, ever to have so exalted viability at the time of injury.[16] That Court thus appears to be moving in the direction I have indicated, including, specifically, a de-emphasis of viability as a criterion in the resolution of these problems.

The majority, therefore, as a matter of South Carolina law, inordinately elevates viability as a criterion, though that criterion has been in the process of de-emphasization in South Carolina's courts and may be, in those courts, an irrelevance. On the other hand, the majority, as a matter of South Carolina law, ignores the one criterion which South Carolina's courts hold determinative.

From what it has said, I think the conclusion inescapable that the Supreme Court of South Carolina would not award this plaintiff a largely duplicating recovery. I think it would hold viability at the time of injury an irrelevance. Surely it would not elevate that factor as a crucial determinant to the great potential detriment of living children crippled by prenatal injuries suffered before they became viable. I think that Court would hold that this narrow claim of little merit does not justify distortion of the governing legal principles with resulting prej-

15. 30 N.Y.U.L.R. 1621.

16. See text preceding footnote 8.

udice to the assertion of highly deserving claims.[17] What South Carolina's Supreme Court has said points clearly that way.

I agree with the District Judge that South Carolina does not recognize a cause of action for wrongful death of a stillborn child.

Believing we should affirm, I respectfully dissent from the judgment of my Brothers.

## ADDENDUM

HAYNSWORTH, Circuit Judge.

On September 14, 1964, an opinion of the Supreme Court of South Carolina was filed in Fowler, Administrator, v. Woodward, 138 S.E.2d 42, in which it is explicitly held that an action for wrongful death of a viable, stillborn child may be maintained in South Carolina. That opinion, placing principal reliance upon the recent cases in the Maryland Court of Appeals and the Court of Appeals for the Third Circuit which we had earlier considered, discloses no awareness of the opinions previously filed by us in this case. However, it stands as an authoritative declaration of South Carolina law, which, in this diversity case, unquestionably controls the result here and proves my Brothers more reliable than I in predicting a subsequent course of decision in the Supreme Court of South Carolina.

Though the judgment in this case was filed some six weeks earlier than the opinion of the Supreme Court of South Carolina in Fowler, our mandate was stayed upon information that the identical question had been submitted to the Supreme Court of South Carolina and was pending decision in that Court. It is possible, therefore, for me to withdraw the notation of my dissent from our judgment order and join in the judgment of the Court. That I do in recognition of the controlling effect of the decision of the South Carolina Supreme Court in the Fowler case.

---

17. Sox v. United States, E.D.S.C., 187 F. Supp. 465, is illustrative of such deserving claims. The mother was severely injured in an automobile accident, sustaining multiple fractures of the pelvis, and the fetus she was carrying suffered a brain injury. Three months later, the child was delivered by Caesarean section. At the time of trial she was 2½ years old. She had a substantial life expectancy, but, because of the brain injury, she was sightless, speechless, without capacity to control her limbs or even to hold up her head. Liability of the United States under the Tort Claims Act was determinable under the laws of South Carolina, and there was, at least, a substantial question of the viability of the child at the time of injury three months before birth. The United States conceded its substantive liability, however. It properly anticipated that the court would hold that, under South Carolina law, viability at the time of injury was an irrelevance.

The child's impairment was so great, she was allowed a recovery of $260,000.