## Milicevich *v.* Paterline, Appellant.

Argued March 19, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Avra N. Pershing, Jr.,* with him *Henry B. Waltz, Jr.,* for appellant.

*Robert B. Mitinger,* with him *Mitinger & Mitinger,* for appellee.

*Dennis C. Harrington,* with him *James P. McArdle,* for appellees.

*Paul M. Robinson,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, April 22, 1957:

On December 3, 1953, a bright and clear day, at about 4:30 p.m., Dorothy Milicevich, 9 years of age, and her little companion Tommy Sherbondy, 7 years of age, on their way home from the neighborhood store, were walking in a southwardly direction on the grass berm adjoining Legislative Route 64123 in South Huntington Township, Westmoreland County, when the boy's grandfather, Lloyd Sherbondy, drove up in a Chevrolet car. He stopped to pick up Tommy and, to do so, took his car as far off the highway as the embankment on the other side permitted. Tommy crossed the road, boarded the Chevrolet car, and with his grandfather exited from the tragedy which was quickly to follow. Dorothy continued on her journey. During

this while, two other boys: her brother, Stephen, 7 years old, and Kenneth McGuffey, 6 years of age, were walking toward her on the same side of the road— also on the berm. When Dorothy was still about 19 feet from the boys, an Oldsmobile car, being speedily driven by Melvin Paterline in a northwardly direction, bore down from his lane of travel to the other side of the road, mounted the berm, and crashed into the three children, killing Kenneth and injuring Dorothy and Stephen.

In the ensuing lawsuits, which were all tried together, the jury returned verdicts against Paterline as follows:

1. In favor of Kenneth McGuffey, administrator of the Estate of Kenneth McGuffey, Jr., $610.85 under the Wrongful Death Act and $10,000 under the Survival Statute.

2. In favor of Nicholas Milicevich $15.00 for medical expenses and $2,000, as guardian of Dorothy.

3. In favor of Nicholas Milicevich $1433.18 for medical expenses and $25,000 as guardian of Stephen.

Lloyd Sherbondy, who was brought in as an additional defendant, was exonerated of all blame.

Melvin Paterline, the original defendant, has appealed for a new trial, alleging that the jury erred in excluding Sherbondy from liability, that the Trial Court erred in its instructions with regard to both Paterline and Sherbondy, that Paterline was entitled to certain instructions on the ground that he was confronted with a sudden emergency, that the Court erred in other parts of its charge, and that the verdicts were excessive.

We have carefully studied the Court's charge and find it free of reversible error. The issue in the case was strictly one of fact and it was presented to the jury as such. Paterline contends that the accident was

due entirely to Sherbondy's stopping on the highway. His counsel says in his brief: "A reasonably prudent person would not stop a car over the brow of a hill with all four wheels on the paved portion of a country road . . ." But the jury did not find that Sherbondy had stopped with all four wheels on the paved portion of the road. They accepted as fact Sherbondy's testimony that he had stopped with his two right wheels 18 inches over the edge of the asphalted highway, leaving adequate space (the road was 17½ feet wide) for other cars to pass.

Paterline's counsel also argues that Sherbondy was negligent in stopping "so close to the brow of a hill where an oncoming car would not see him until it was right upon him." Here again the defendant assumes what the jury found to the contrary. A police officer testified that the distance between the brow of the hill, over which Paterline came, and the point at which Sherbondy picked up his grandchild was 233 feet, which was ample distance within which Paterline could have brought his car to a standstill if he had been exercising due care. Sherbondy did not violate any provision of The Motor Vehicle Code when he stopped momentarily on the highway for the purpose indicated after having moved his car off the highway as far as he could go.

The jury was justified in coming to a conclusion that Paterline's negligence was extraordinary and devoid of ameliorating circumstances. He had a clear view of Sherbondy's car and the children close by when he was already 233 feet away. If it appeared to him that the space between Sherbondy's car and the berm did not permit his passing through with safety, he should have slackened his speed until Sherbondy had left the area. If he saw the children on the berm and doubted that he could take his car between them and

Sherbondy's automobile without injuring the children, he should have brought his vehicle to a stop or have reduced his speed until the passing space was wider. But Paterline did not diminish his speed. He approached at 45-50 miles per hour, veered to his wrong side of the road, invaded the berm, and ploughed into the adjoining field to which the children had fled in terror and struck them with such force that nine-year-old Dorothy's shoes were knocked from her feet, six-year-old Kenneth died within two hours from the injuries inflicted, and seven-year-old Stephen's skull was fractured to the extent that for 16 days he was in an unconscious and semiconscious state.

Paterline seeks to shake off responsibility for the tragedy by asserting that he was confronted with a sudden emergency from which he could not reasonably extricate himself, but the emergency was one of his own manufacture. From the moment that he reached the brow of the hill and saw the Sherbondy car and the children 233 feet away he knew that the longer he travelled with undecelerated speed the shorter was the distance to a disastrous collision. In spite of what his eyes told him he continued with unabated velocity toward three tender-aged children, ignoring all rules with regard to the care required on the part of motorists when approaching children on or close to the highway. (*Robb v. Miller*, 372 Pa. 505.)

The appellant Paterline practically admits his negligence when he argues through his counsel's brief: "Construing the testimony in the light most favorable to appellant, he was driving at a legal speed when he came over the top of the hill, saw the Sherbondy car in the roadway, slowed his car down slightly and was approaching Sherbondy's car to pass it upon the proper side of the road, *when for the first* he observed the three children at the edge of the road. They were in

such a position that he felt he could not safely pass between them and the Sherbondy automobile. Although he believes he could have stopped safely when he first discovered the Sherbondy car, *he could not stop when he discovered* the children. In an attempt to avoid striking the children or a rear end collision with Sherbondy, he swung his car off the road to his left into the field." (Emphasis supplied).

If Paterline did not see the children until he was close to Sherbondy's car, he was inattentive to conditions on the highway. If he did not note the presence of the children until it was too late to avoid striking them (and they were not even on the highway!) he certainly was not exercising the care required under the circumstances. As Paterline sped over the highway toward a traffic isthmus which, according to his own testimony, was not wide enough for him to traverse, and as he went into a high-powered skid which, according to tire marks, showed a lack of control for 170 feet on the highway and for 103 feet in the field, he collided with culpable force against Section 501(a) of The Vehicle Code (Act of May 1, 1929, P. L. 905, as amended by Act of June 5, 1937, P. L. 1718), which reads: "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle, upon a highway at such a speed as to endanger the life, limb or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead."

From this collision he emerged with a responsibility to his victims which the jury did not overappraise.

The verdict of $2,000 for Dorothy's injuries was a modest one. This was the little plaintiff who was knocked out of her shoes. She sustained injuries to her back.

The verdict of $25,000 for Stephen was substantial, but not exorbitant, considering the nature of his injuries. He suffered a fractured skull which affected his brain and as a result his right arm and leg are partially paralyzed. In addition, the brain injury has affected his speech. He is also subject to convulsions. Dr. Stuart Rowe, specialist in neurosurgery, testified: "With his history of having had one or more convulsions and with the whole clinical picture and all of the examinations suggesting damage to the parietal area of the brain, with involvement of the immediate nerves which control the right side, I believe there is a possibility that this child may have convulsive seizures at a later age, particularly in his teens, when these seizures are apt to begin. I don't believe that the damage to his speaking area or centers will be altered, but as he grows older and would normally use a larger vocabulary and use his speech for more complicated expression, the depreciation, the remaining damage may become more apparent." The medical evidence demonstrates that Stephen Milicevich will have a serious impairment in earning power throughout his whole life. Thus, spread out over the entire span of his future years, we cannot say that the amount allowed by the jury was excessive.

The evidence also supports the verdict of $10,000 under the Survival Statute in the Kenneth McGuffey case.

Judgments affirmed.