Frank J. **BLISARD**, Administrator of the Estate of James M. Hoffner, Deceased,

v.

Jacob **VARGO**.
No. 23538.
Civ. A. No. 23538.

United States District Court
E. D. Pennsylvania.

July 7, 1960.

Marshall A. Bernstein, Bernstein & Bernstein, Philadelphia, Pa., for plaintiff.

Ralph S. Croskey, Philadelphia, Pa., for defendant.

GRIM, District Judge.

This diversity case arises out of an accident in which James M. Hoffner, Jr., aged 8½ years, was struck and killed on a public road near Perkasie, Pennsylvania, by an automobile which defendant was operating. There were jury verdicts for the plaintiff of $1,568.54 in the death action [1] and $50,000 in the survival action.[2] Defendant has moved

for a new trial on the alleged grounds that the verdict in the survival action was excessive, unsupported by the evidence, and the result of passion and prejudice.

The boy's father, aged 44, was employed as secretary of a family corporation capitalized at $600,000, which operated four plants and employed 225 people. He had charge of all dyeing done by the corporation and by several suppliers. The family business had been started by the boy's paternal grandfather in 1923 and had grown steadily since then. The father had been in the business continuously since 1945. His salary then was $7,500 per year. In 1959 the father's salary from the business (including a related family corporation formed that year) was $21,500. In 1958 his salary from the business was $20,000, and in 1947, $16,000.

The boy had two brothers. The father's four brothers were active in the business and had among them five sons. At the time of his death the boy was in good health. According to tables, the life expectancy of a person between 8 and 9 years of age is 60.91 years. The boy was nearing the end of the third grade of school at the time of his death. His father planned to send him to college and the boy's school marks indicated that he would have sufficient ability to go to college. With 9 more years of school and 4 years of college before him, it was not likely that the boy would begin to earn any significant amount of income until he reached the age of 21 or 22 years. He therefore had an expectancy of some 47 years of earning.[3]

In the light of this evidence the jury would have been justified in finding that the boy would have a place made

1. Under the Pennsylvania Act of April 26, 1855, P.L. 309, as amended, 12 P.S. § 1602.

2. Under the Pennsylvania Act of April 18, 1949, P.L. 512, Sec. 603, 20 P.S. § 320.-603.

3. I find no evidence to support defendant's contention that the boy would have retired at the age of 65 and then would have ceased to earn. From the evidence the jury could have found that the boy would have become an executive in the family business and that he would not have retired at 65. There is the rule, moreover, that all inferences are to be viewed in the light most favorable to the winner of the verdict.

ready for him in the family business, that he would advance to a position of responsibility in the business, that the business would continue to grow, and that his earnings from the business over the period of his expectancy would have been so large that these earnings, less what he would have to pay out for his own maintenance, reduced to present value, would amount to $50,000.[4] These findings are rational and the amount of the verdict does not shock the court's conscience.

The factor in this case which makes it unique and consequently renders fruitless any comparison with verdicts in other cases is the fact that this boy had before him the prospect of almost certain employment, if he wished it, in a prosperous and growing business which was owned by his family and in which his father had an influential position. The boy was thus sheltered to a large degree from the risks that the average person might encounter in seeking and retaining lucrative employment. True, the boy may have had no aptitude for or interest in the business, his father might lose his important position, or the business might suffer reverses, but on the evidence the jury was warranted in finding that the boy's prospects were good rather than bad.

Defendant makes the further contention that it was error to permit plaintiff's counsel to ask the boy's father:

"And based on your experience with that business in the last fifteen years, what, if anything, can you tell us within the limits, of course, of human predictability as to the future of that business?"

Defendant contends that the question was improper because it was highly speculative.

■ Here was a boy who had before him a ready-made career in a specific business belonging to his family. Evidence of the earnings he might reasonably expect to receive from that business was a vital element in establishing the amount of damages to which plaintiff was entitled, and the condition and prospects of the business were important factors in determining the amount of the expected earnings. The father, because of his intimate knowledge of, and active participation in, the business, was in an excellent position to express an opinion as to the future prospects of the business. If, in answer to the question, he had expressed the opinion that the business would maintain its current position or improve, the defendant could have developed on cross-examination or by other evidence, if such were the fact, that the business was going downhill, that strong competition was developing, or that for any other reason the opinion was unsound. The opinion called for from this witness was not speculative.

In fact, the father's answer to the question was not an opinion as to the future of the business, but only a recital of its past history, and defendant was in no wise prejudiced by the question or the answer.

The verdict was supported by the evidence and was within the limits in which the jury might properly exercise its fact-finding function. It was not excessive or the result of passion or prejudice. The verdict will be sustained.

The motion for new trial will be denied.

---

4. Assuming that the father's average earnings from the business would be $14,000 a year (a very conservative figure in the light of his earnings during the last three years), and assuming, not unreasonably, in the light of the continuous inflation to which we are all subject, that the son's average annual earnings would be the same, those earnings for the 47 years of his expectancy would amount to $658,000. This amount, decreased by the expenses of his maintenance, and reduced to present value, could very well leave a balance of $50,000.