William H. GULLBORG, Administrator of the Estate of Baby Gullborg, deceased, on behalf of the Estate of Baby Gullborg, deceased, et al.

v.

Frank J. RIZZO, Jr., Fern Hazlett Butcher and Rodolf C. Hernandez, Frank J. Rizzo, Jr., Appellants.

Nos. 14454, 14455.

United States Court of Appeals Third Circuit.

Argued Nov. 19, 1963.

Decided April 14, 1964.

As Amended May 12, 1964.

William J. Lancaster, Pittsburgh, Pa., for appellants.

Seymour A. Sikov, Pittsburgh, Pa., for appellees (Wirtzman, Sikov & Love, Pittsburgh, Pa., on the brief).

Before McLAUGHLIN, KALODNER and GANEY, Circuit Judges.

KALODNER, Circuit Judge.

Is there right of recovery under the Pennsylvania Wrongful Death [1] and Survival Acts [2] for the wrongful death of a stillborn viable fetus?

1. 12 P.S. §§ 1601, 1602.

2. 20 P.S. §§ 320.601–602–603.

That is the primary question presented by this appeal from the judgment of the District Court entered pursuant to a jury's verdict awarding damages to the plaintiffs. The District Court answered the question in the affirmative and this appeal followed.[3] Jurisdiction is based on diversity and Pennsylvania law applies.[4]

The issue is novel in the sense that the precise question has never been decided by the appellate courts of Pennsylvania and that being so we are required to consider such approach to the problem as may be indicated by the Pennsylvania cases in the general field and to resort to general applicable principles to reach a conclusion consistent with Pennsylvania law. In sum, it is incumbent on us to make our own determination of what the Pennsylvania Supreme Court would probably rule in a similar case.[5]

The Pennsylvania Supreme Court has twice had occasion within the past quarter century to consider the issue as to whether an infant can maintain an action for injuries sustained prior to birth. In 1940 it held that it could not do so in Berlin v. J. C. Penney Company, Inc., 339 Pa. 547, 16 A.2d 28 and in 1960 it held to the contrary in Sinkler v. Kneale, 401 Pa. 267, 164 A.2d 93.

In Berlin the Court held, at page 549 of 339 Pa., at page 28 of 16 A.2d:

"* * * there is no warrant for holding, independent of a statute, that a cause of action for pre-natal injuries to a child accrues at birth. 4 Restatement, Torts, Sec. 869."

In Sinkler, in a penetrating analysis of the many decisions then extant, the late Justice Bok, speaking for the Court, pointed out that the majority view in the United States, which had denied recovery at the time of Berlin has since veered in the opposite direction.

In doing so, Justice Bok said (p. 269 of 401 Pa., p. 97 of 164 A.2d):

"By now all four jurisdictions on which Berlin relied have reversed themselves and at present uphold the right of action when the child is born alive: Woods v. Lancet, 1951, 303 N.Y. 349, 102 N.E.2d 691, 27 A.L.R. 2d 1250; Amann v. Faidy, 1953, 415 Ill. 422, 114 N.E.2d 412; Smith v. Brennan and Gailbraiths, 1960, 31 N.J. 353, 157 A.2d 497; and Keyes v. Construction Service, Inc., 340 Mass. 633, 1960, 165 N.E.2d 912."

It should be noted that in Sinkler the mother was one month pregnant with the infant plaintiff at the time of the accident which caused it to be born Mongoloid. The Court evidently deemed the fact that the fetus was not viable as unimportant, and expressed the view (at page 273 of 401 Pa., at page 96 of 164 A.2d) that the viability or lack of viability of the infant at the time its injuries were received has "little to do with the basic right to recover, when the foetus is

3. In substance, these are the facts: On a summer morning in 1960 two automobiles collided in Westmoreland County, Pennsylvania. In one were members of the family of William H. Gullborg, including his wife, then some six months pregnant. The collision caused the stillbirth of a fully formed female infant weighing two pounds, two ounces, and described by the attending physician as capable of living apart from the mother's body. The father as administrator of the dead child's estate, and in his own right, together with the mother and several living children, filed suit in trespass against Frank J. Rizzo, Jr. and others. The complaint alleged the amount in

controversy to be in excess of $10,000, and diversity of citizenship existed. The jury awarded $5,000 in favor of the still-born child's estate and the amount of the funeral bill, $158.00 to the next of kin. Dismissing motions of defendant Rizzo for judgment N.O.V. and for new trial, the court below entered judgment on the verdict. Thereupon that defendant filed the pending appeal.

4. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. Gerr v. Emrick, 283 F.2d 293, 294, (3 Cir. 1960), cert. den. 365 U.S. 817, 81 S. Ct. 698, 5 L.Ed.2d 695 (1961).

regarded as having existence as a separate creature from the moment of conception." [6] Viability is the stage at which the fetus is able to survive when separated from its mother. Schmidt, Attorneys' Dictionary of Medicine, p. 870 (1962) defines it as "the ability to survive outside the uterus." In the instant case it is undisputed that the fetus which was 6½ months in being, weighed two pounds and two ounces and fully formed, was viable.

Sinkler has established that a child who is *born alive* may recover for prenatal injuries even though it was a non-viable embryo at the time its injuries were sustained.[7] Our task is to determine whether the Pennsylvania Supreme Court would hold that a cause of action accrues under its Wrongful Death and Survival statutes when a viable infant is *stillborn* as in the instant case.

We think we are justified in stating that Sinkler has demonstrated a tendency on the part of the Pennsylvania Supreme Court to move in the direction of the liberality evidenced in the general field in other jurisdictions.

The first case decided by the highest court of any state was the 1884 one of Dietrich v. Inhabitants of Northampton, 138 Mass. 14, 52 Am.Rep. 242, in which Justice Oliver Wendell Holmes, Jr., then a member of the Supreme Judicial Court of Massachusetts, categorically denied liability for damages in behalf of an infant for prenatal injuries.[8]

Due no doubt to the prestige of Justice Holmes, the doctrine of Dietrich prevailed for some sixty-five years.[9]

Bonbrest v. Kotz, 65 F.Supp. 138 (D. C.Cir. 1946), led a procession of decisions which departed from the holding in Dietrich and permitted actions to be maintained for prenatal injuries to a viable fetus which was *born alive*. An overwhelming majority of states now subscribe to the Bonbrest doctrine.[10]

---

6. In Carroll v. Skloff, C.P. No. 1, Phila. Co. March Term, 1963, No. 5407, decided February 14, 1964, Judge Sporkin did not construe Sinkler as permitting recovery for injuries sustained by a non-viable fetus and explicitly held that a cause of action did not accrue when a non-viable 10-week fetus was removed from its mother by surgical means.

7. In Simmons v. Weisenthal, 29 Pa.Dist. & Co.R.2d 54 (1962), Judge Griffith followed Sinkler in his implicit holding, *in limine*, that a non-viable fetus at the age of 4½ months could *after birth* maintain an action for its pre-natal injuries. In doing so he construed Sinkler as allowing recovery for injuries sustained by a fetus at any time *after conception* without regard to viability. In that respect Simmons differed with Carroll, cited in Note 6, in which Judge Sporkin specifically stated that he did not so construe Sinkler.

8. The mother in that case was between four and five months pregnant; she fell on a defective highway and miscarried; the child lived for ten or fifteen minutes and then died; the child's administrator sued under a statute permitting recovery for death caused by wrongful act. The court ruled that the unborn child was merely a part of the mother at the time of the injury, and was not a "person" within the meaning of the statute.

9. The cases which subscribed to the Dietrich doctrine are collated in Verkennes v. Corniea, 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634 (1949) and in a comprehensive annotation in 10 A.L.R.2d pp. 1059–1072. To the same effect as Dietrich in the United Kingdom was Walker v. Great Northern R. Co., Ir.L.R. 28 CL 69, decided in Ireland in 1891. The Supreme Court of Canada expressed the opposite view in the 1933 case of Montreal Tramways v. Leveille, Can. S.C. 456, 4 Dom.L.R. 337 (1933). So did the Verkennes opinion itself.

10. It is unnecessary to encumber this discussion with detailed citations; they appear fully in Justice Bok's opinion in Sinkler v. Kneale. As that opinion points out, in 1960 some eighteen states allowed recovery, eight denied it; since 1949 seven states among the eighteen had overruled former decisions refusing damages; among the eight in the contrary group, two, said Justice Bok, indicated a likelihood of reversal and two others expressly refrained from determining the

Sharp division exists among the states as to whether, under wrongful death statutes, an action can be maintained for prenatal injuries suffered by a viable fetus which is *stillborn*.

Five state courts—Massachusetts, Nebraska, New York, Oklahoma, and Tennessee have disallowed such actions.[11] Another, South Carolina, has indicated, in an *obiter dicta* expression, its accord with these five states.[12]

Nine state courts—Connecticut, Delaware, Kansas, Kentucky, Maryland, Minnesota, Mississippi, New Hampshire and Ohio have held to the contrary and allowed the actions.[13] The Court of Appeals of Georgia has permitted a civil action for damages to be maintained for the "murder" of a non-viable fetus of 4½ months holding that the test was whether the fetus was "quick" at the time.[14] A federal district court in Iowa, in a diversity action, construed the wrongful death statute of that state to permit the action.[15]

■ The weight of authority evidenced by the foregoing is that an action may be maintained under wrongful death statutes for pre-natal injuries sustained by a viable fetus which is *stillborn* and we think that Sinkler has indicated that Pennsylvania would align itself with the preponderant view.

Two questions remain. Neither warrants extended discussion.

■■ First is whether the verdict of $5,000 for the death of an unborn infant was excessive.[16] Under the Pennsylvania decisions, damages in a survival action are based on the present value of the decedent's prospective earnings for the period of his life expectancy after reaching the age of 21, less his anticipated maintenance expense.[17] In the instant case it was in evidence that the child's father

rights of a child born alive. A comprehensive historical review appears also in the 1960 opinion of the New Jersey Supreme Court in Smith v. Brennan, 31 N.J. 353, 157 A.2d 497, which recognized a cause of action for prenatal injuries in favor of a child born alive and overruled the 1942 New Jersey ruling to the contrary in Stemmer v. Kline, 128 N.J.L. 455, 26 A.2d 489, 684.

11. Keyes v. Construction Service, Inc., 340 Mass. 633, 165 N.E.2d 912 (1960); Drabbels v. Skelly Oil Co., 155 Neb. 17, 50 N.W.2d 229 (1951); Muschetti v. Charles Pfizer & Co., 208 Misc. 870 (1955), 144 N.Y.S.2d 235; Howell v. Rushing, 261 P. 2d 217 (Okla.1953); Hogan v. McDaniel, 204 Tenn. 235, 319 S.W.2d 221 (1958). In re Estate of Logan, 4 Misc.2d 283, 156 N.Y.S.2d 49 (1956), aff'd 2 A.D.2d 842, 156 N.Y.S.2d 152, aff'd 3 N.Y.2d 800, 166 N.Y.S.2d 3, 144 N.E.2d 644, cited by appellant, is inapposite since there the stillborn fetus was not viable—its age being but 5½ months.

12. West v. McCoy, 233 S.C. 369, 105 S.E. 2d 88 (1958).

13. Gorke v. LeClerc, 23 Conn.Super. 256, 181 A.2d 448 (1962); Worgan v. Greggo & Ferrara, Inc., 11 Terry 258, 50 Del. 258, 128 A.2d 557 (1956); Hale v.

Manion, 189 Kan. 143, 368 P.2d 1 (1962); Mitchell v. Couch, 285 S.W.2d 901 (Ct. of App.Ky.1955); State of Maryland, use of Odham v. Sherman, Md., 198 A.2d 71 (1964); Verkennes v. Corniea, 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634 (1949); Rainey v. Horn, 221 Miss. 269, 72 So.2d 434 (1954); Poliquin v. MacDonald, 101 N.H. 104, 135 A.2d 249 (1957); Stidam v. Ashmore, 109 Ohio App. 431, 167 N.E.2d 106 (1959).

14. Porter v. Lassiter, 91 Ga.App. 712, 87 S.E.2d 100 (1955).

15. Wendt v. Lillo, 182 F.Supp. 56 (N.D. Iowa 1960).

16. There were other awards to other parties plaintiff, which are not involved in this question. Judgment was also entered against a codefendant of the appellant Rizzo, but only he appealed. The jury absolved a third defendant.

17. Swartz v. Smokowitz, 400 Pa. 109, 161 A.2d 330 (1960); Murray v. Philadelphia Transportation Company, 359 Pa. 69, 58 A.2d 323 (1948). Factors taken into account include the child's physical condition, the parents' station in life, and the child's prospects of future earnings: Krasowski v. White Star Lines, Inc., 307 Pa. 470, 162 A. 200 (1932). An element of speculation is recognized as inevitable: Swartz v. Smokowitz, supra.

was a college graduate who had earned and was likely to earn a substantial income; that the dead child was a fully formed female, and that until the accident the mother had experienced a normal pregnancy. In view of these circumstances it cannot be said that the jury's award of $5,000 was not in consonance with the stated Pennsylvania rule.[18] In Pennsylvania a jury's award is deemed excessive when it shocks the conscience of the court.[19] Recoveries in Pennsylvania in survival cases by the estates of deceased children have often reached and exceeded $10,000 without any manifest shocking of the judicial conscience.[20] The court below expressly upheld the verdict. We are in accord.

The question remaining is whether, in view of the actual verdict, the allegation of damages in excess of the jurisdictional level sufficed to confer jurisdiction. The test is applied *in limine;* only when it appears with legal certainty that the claim cannot possibly reach the requisite level will the action be dismissed; the mere fact that the jury ultimately returns a smaller verdict does not defeat the original jurisdiction.[21] Cases have already been cited to demonstrate that in a situation such as the one before us a verdict of $10,000 would not be ruled excessive.[22] On this point likewise the court below decided against the defendant and again we find ourselves in accord.

For the reason stated the judgment of the District Court entered pursuant to the jury's verdict in favor of the plaintiffs will be affirmed.

18. At birth a female infant has a life expectancy of 74.1 years; 1963 Life Insurance Fact Book, p. 109. Under the Pennsylvania formula she would have in anticipation 53 years of adulthood in which to accumulate the requisite sum.

19. DeSimone v. City of Philadelphia, 380 Pa. 137, 110 A.2d 431 (1955).

20. See Milicevich v. Paterline, 388 Pa. 346, 131 A.2d 129 (1957) ($10,000 under the Survival Statute plus $610.85 under the Wrongful Death Act); DeSimone v. City of Philadelphia, supra. Note 18 ($15,000 in the survival action, $350 in

the wrongful death action); Blisard v. Vargo, 185 F.Supp. 73 (E.D.Pa.1960) ($50,000), aff'd per curiam, 286 F.2d 169 (3 Cir. 1961). In the last case the Court of Appeals said (286 F.2d p. 170): "Our authority in such a case is a very limited one. We find no abuse of discretion by the trial judge."

21. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Wade v. Rogala, 270 F.2d 280, 285 (3 Cir. 1959).

