**Jill URIS and Leon Uris, Plaintiffs,**

v.

**GURNEY'S INN CORP. and Recreatives, Inc., Defendants.**

**No. 71 C 1102.**

United States District Court, E. D. New York.

Nov. 21, 1975.

William F. O'Connor, New York City, for plaintiffs.

Tell, Cheser & Breitbart by Solomon M. Cheser, New York City, for Gurney's Inn.

Rein, Mound & Cotton by Marshall M. Kolba, New York City, for Recreatives.

NEAHER, District Judge.

Plaintiff Jill Uris in this diversity action sued to recover damages for injuries sustained by her as a result of an accident which occurred on October 8, 1970 when a Max vehicle[1] in which she was riding overturned and she was apparently thrown to the roadway. The vehicle was manufactured by defendant Recreatives, Inc. ("Recreatives") and driven by Scherr Lillico, an employee of defendant Gurney's Inn Corporation ("Gurney's"). Plaintiff Leon Uris sued for damages for the loss of his wife's services. The case was tried to a jury which returned a verdict in plaintiffs' favor against Gurney's and exonerated Recreatives.

By answer to questions posed by the court in a special verdict form, the jury awarded damages in the following amounts:

### Jill Uris

For pain and suffering from
October 8, 1970, to date: $200,000.00

For future pain and
suffering 300,000.00[2]

### Leon Uris

For medical, hospital and
related necessary expenses to date: $ 12,133.26

For loss of services,
companionship and
consortium of Jill Uris 25,000.00

Gurney's now moves to set aside the verdict and for a new trial, Rule 59(a), F.R.Civ.P., asserting numerous claims of error relating to the court's charge and rulings during the trial. All of these matters were fully aired during the trial and the court adheres to its rulings for the reasons expressed at the time.

Gurney's also moves to set aside the verdict as contrary to the weight of the evidence. There was adequate evidence from which the jury could find, as it did, that Gurney's employee, Scherr Lillico, negligently lost control of the Max vehicle she was driving, resulting in the injuries complained of. Accordingly, this branch of the motion is also denied.

Finally, Gurney's contends that the verdict awarding Jill Uris a total of $500,000 for pain and suffering should be set aside as excessive and the result of an inflammatory and prejudicial summation by plaintiffs' counsel. For the reasons stated below, the court agrees that the portion of the verdict awarding $300,000 for future pain and suffering was grossly excessive based on the evidence adduced and was probably arrived at because of remarks and suggestions by plaintiffs' counsel during summation. Accordingly, a new trial is ordered on the issue of damages alone, unless plaintiff Jill Uris agrees to reduce the total damage figure from $500,000 to $300,000.[3]

## DISCUSSION

There is no question that Jill Uris did sustain severe and permanent head injuries as a result of the accident. A compound fracture in the right occipital area and extending to the front of the head resulted in an open skull and tearing and serration of the brain. On October 12, 1970, she experienced a convulsion and successfully underwent surgery to relieve intercranial pressure caused by a subdural hematoma. While in the hospital after the surgery, she experienced an aphasia, impairing her ability to speak, read and walk. The condition was substantially, if not completely, corrected by the time she was discharged from the hospital on November 13, 1970.

1. The vehicle was similar to a dune buggy.

2. There was no claim for loss of earnings in this case.

3. Gurney's has not urged the excessiveness of awards made to Leon Uris for medical disbursements and loss of services and that portion of the verdict remains unaffected by this decision.

Soon after her discharge from the hospital she, to her credit, resumed her active life, which included making several trips abroad, skiing and participating in other sports activities, driving and resuming her occupation as a photographer.

Dr. Robert W. Sengstaken, who performed the brain surgery on Mrs. Uris testified and described in detail the operation. He explained that because of the injury the brain area controlling speech and thought, among other things, had swollen. He removed torn pieces of the brain from this area and then covered up the brain with its dense tough covering, known as the dura. However, because of the swelling he was unable to suture the dura inferiorly, i. e., on the inside, and sewed it closed only on its upper portion. The skull was then sutured closed without incident.

After the operation, her brain did not immediately begin functioning normally, causing the aphasia alluded to earlier, but with time and therapy she rapidly recovered. She was discharged from the hospital on November 13, 1970, approximately a month after entering.

During December 1970, she reported having an abortive convulsion. She was placed on anti-convulsant drugs, which she no longer takes. Six examinations by Dr. Sengstaken over the subsequent two and one-half years revealed steady improvement and his report dated June 14, 1973 described her as asymptomatic, all neurological tests being normal.

No medical testimony was produced on behalf of either defendant. Mrs. Uris'

claim for damages for future pain and suffering is predicated on four factors:

1. The non-solidification of the bone flap in her skull.

2. A fear of recurrent convulsions.

3. A partial loss of smell.

4. A slight weakness in the grasp in her right hand and dorsiflexion of her right wrist as compared with her left hand and wrist.

In support of her claims, Dr. Sengstaken testified that there was permanent scarring of her brain tissue which could cause a convulsive disorder at any time. He admitted, however, that the likelihood of convulsions occurring was greatest during the first two years after the operation and declined thereafter, except that as "she gets into the older age group . . . the chance for seizures will redevelop . . . ." (Tr. 511.) It is conceded that, except perhaps for the aborted convulsion in December 1970, plaintiff Jill Uris has not suffered any convulsions since October 1970, over five years ago.

■ Having made a detailed appraisal of the evidence bearing on her claims of residual problems, see *Grunenthal v. Long Island R.R. Co.*, 393 U.S. 156, 159, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968), the court is of opinion that the jury's award to Jill Uris of $500,000 and particularly the $300,000 for future pain and suffering was so grossly large that it would be a denial of justice to permit it to stand. *Dagnello v. Long Island R.R. Co.*, 289 F.2d 797, 806 (2 Cir. 1961). Even giving effect to inflation, the jury's award is far in excess of other awards for similar injuries.[4] It should also be noted that,

4. In *Kozminsky v. Sobel*, 31 A.D.2d 759, 297 N.Y.S.2d 635 (2d Dep't 1969), the jury awarded an infant plaintiff $75,000 for injuries from a skull fracture which caused a bone fragment to be driven into the brain resulting in permanent damage to brain tissue. An operation on the brain left a hole in the infant's skull which is a potential source of danger. In *Malvasio v. Landers*, 29 A.D.2d 884, 289 N.Y.S.2d 742 (2d Dep't 1968), the court ordered a remittitur reducing from $95,000 to $50,000 a jury verdict based on evidence of permanent brain damage

involving no impairment of physical activity. In *Klein v. Eichen*, 63 Misc.2d 590, 310 N.Y.S.2d 611 (Sup.Ct. Bronx County 1970), the jury returned a $40,000 verdict in favor of an infant (2½ years old at the time of the accident) for injuries including a skull fracture, cerebral concussion and post-concussion syndrome as a permanent injury.

In *Melendez v. New York City Omnibus Corporation*, 139 N.Y.S.2d 778 (Sup.Ct. N.Y. County 1955), a case in which the injuries were remarkably similar to those here (al-

as Gurney's argues, the $300,000 represents an award for damages to occur over the next 49.7 years of plaintiff Jill Uris' life and it, therefore, should be considered as the discounted value of a much higher figure contemplated by the jury.[5]

The excessiveness of the verdict was undoubtedly the result of counsel's suggestion of specific amounts to the jury. During summation counsel requested the jury to award $300,000 for past pain and suffering, $30,000 for lost services and $300,000 for future pain and suffering. The jury's specific awards, listed above, closely tracked counsel's suggestions and, in fact, was identical as to future pain and suffering. Defense counsel objected to counsel's summation and requested the court to give a neutralizing instruction to the jury.

The court did charge the jury that "statements of fact made during the course of [counsels'] summations, are not to be taken in place of your own independent recollection of the evidence" (Tr. 2298). However, this instruction was of a general nature, not specifically directed at the figures suggested by counsel and in light of the Court of Appeals' opinion in *Mileski v. Long Island Rail Road Company*, 499 F.2d 1169, 1172–74 (2 Cir. 1974), wholly inadequate under the circumstances.[6]

Accordingly, Gurney's is entitled to a new trial solely on the issue of damages. The court may, however, condition such a new trial on plaintiffs' failure to remit that portion of the verdict deemed excessive. See, *e. g., Cosentino v. Royal Netherlands Steamship Company*, 389 F.2d 726 (2 Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 441, 21 L.Ed.2d 438 (1968).

As a guideline in determining how much of the verdict is excessive, the court adopts the approach favored by Professor Moore, *i. e.*, the excess over the amount the court believes a properly functioning jury should have found. 6A Moore's Federal Practice, ¶ 59.05[3]. In this case, the court believes a properly functioning jury, acting free of suggestions by counsel, would have awarded Jill Uris total damages of $300,000 for both past and future pain and suffering.

Accordingly, defendant's motion for a new trial is granted only to the extent of directing a retrial of the damage issue unless plaintiff Jill Uris, within thirty (30) days from the date hereof, remits the amount of $200,000, thereby reducing the jury's verdict in her favor to $300,000, in which event the Clerk shall enter judgment upon the verdict as so reduced with interest from the date of verdict.

So ordered.

though somewhat more severe), the court awarded $45,000 to a 46-year old man whose injuries were described as

"a fracture of the left temporal-parietal region of the skull with brain damage and various positive neurological signs. . . . [H]e developed convulsive seizures involving chiefly the right side of the body, followed by a right hemiplegea and total asphasia. He underwent a craniectomy to relieve a subdural hematoma. Although plaintiff's condition is now greatly improved, he continues to suffer from traumatic epilepsy, post-traumatic psychosis and various minor neurological symptoms."

There was also a loss of earnings element in that case.

In *Selleck v. Board of Education Central School District No. 1*, 276 A.D. 263, 94 N.Y. S.2d 318 (3d Dep't 1949), the jury awarded $45,000 for injuries to an eight-year old boy which included the possibility of epilepsy because of residual scarring of brain tissue compounded by actual atrophy of part of the brain.

A similar case from a neighboring jurisdiction, *Milicevich v. Paterline*, 388 Pa. 346, 131 A.2d 129 (1957), involved a $25,000 jury award for injuries sustained by a seven-year old child which included a fractured skull, partial paralysis of right arm and leg, speech impairment and possibility of convulsive seizures in later life.

5. The court had charged the jury to "make adequate allowance for the earning power of . . . money" in connection with any award for future pain and suffering (Tr. 2335–36).

6. Because of the result reached, the court does not find it necessary to decide whether it was unduly prejudicial for plaintiffs' counsel during summation to accuse the defendants of conspiring to raise a specious defense at the very time Jill Uris was "dying" in the hospital (Tr. 2372).